**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Chief Judge Daniel D. Domenico**

Civil Action No. 1:26-cv-02428-DDD

ORELBYS MATEO SAINZ,

     Petitioner,

v.

GEORGE VALDEZ, Denver Field Office Director, U.S. Immigration and Customs Enforcement;
DAVID J. VENTURELLA, Acting Director, U.S. Immigration and Customs Enforcement;
JUAN BALTAZAR, Warden, GEO Group Aurora ICE Processing Center; and
TODD BLANCHE, Acting Attorney General;

     Respondents.[1]

---

### ORDER DENYING WRIT OF HABEAS CORPUS

---

Petitioner Orelbys Mateo Sainz seeks a writ of habeas corpus directing his release from immigration detention. Doc. 1. For the following reasons, his petition is denied.

### BACKGROUND[2]

The petitioner is a native and citizen of Cuba. Doc. 1 at 10; Doc. 12-1 at 2. The petitioner entered the United States on or about July 2, 1992, but he was never admitted and inspected or paroled into the United

---

[1] To the extent that any of the original respondents has ceased to hold office during the pendency of this action, that party's successor "is automatically substituted as a party," and "any misnomer not affecting the parties' substantial rights must be disregarded." Fed. R. Civ. P. 25(d).

[2] In this Order, pinpoint citations to the record use the blue page number appended by the Court's Electronic Case Filing system at the top of each page, which may differ from a document's internal pagination.

States. Doc. 12-1 at 2. On February 24, 1999, the petitioner was convicted of Trafficking of a Controlled Substance in violation of New Mexico statute and sentenced to nine years in prison and four years of probation. *Id.* On March 28, 2001, following his release from state custody on probation, U.S. Immigration and Customs Enforcement arrested and detained the petitioner to pursue removal proceedings. *Id.* On March 29, 2001, ICE issued a Notice of Intent to Issue a Final Administrative Removal Order. *Id.* On March 30, 2001, ICE issued a Final Administrative Removal Order and ordered the petitioner removed to Cuba. Doc. 1 at 10; Doc. 12-1 at 2. On August 23, 2001, ICE released the petitioner on an order of supervision. Doc. 12-1 at 2.

On August 3, 2005, the petitioner was revoked from probation for failure to report. *Id.* On June 23, 2006, following his release from state custody, ICE again arrested and detained the petitioner to effectuate his removal from the United States. *Id.* at 2-3. On October 18, 2006, ICE again released the petition on an order of supervision. *Id.* at 3.

On March 13, 2013, ICE officers encountered the petitioner while he was in state custody in New Mexico. *Id.* On March 20, 2013, upon his release from state custody, ICE again arrested the petitioner and immediately released him on an order of supervision. *Id.*

On February 24, 2026, ICE officers encountered the petitioner in New Mexico, where he was arrested and detained to effectuate his removal from the United States. Doc. 1 at 10; Doc. 12-1 at 3. The petitioner has remained in detention since that time. Doc. 12-1 at 3-4. The Cuban government has informed ICE that it will not accept the petitioner for repatriation. *Id.* at 3.

The petitioner initiated this action on June 1, 2026. He contends his continued detention violates his right to due process under the United

States Constitution because it is unlikely that he will be removed in the reasonably foreseeable future. Doc. 1.

On June 4, 2026, the respondents were ordered to show cause why the petition should not be granted. Doc. 7. On June 9, 2026, the respondents filed a response. Doc. 12.

On June 10, 2026, I entered an order directing the petitioner to file a reply, if any, on or before June 24, 2026. Doc. 14. On June 26, 2026, the petitioner filed a document that I construe as a reply.[3] Doc. 18.

## LEGAL STANDARD

An application for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 "is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973); *see also McIntosh v. U.S. Parole Comm'n*, 115 F.3d 809, 811 (10th Cir. 1997). Habeas corpus relief may be granted if the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Federal courts have habeas jurisdiction to hear statutory and constitutional challenges to immigration detention. *See Demore v. Kim*, 538 U.S. 510, 516-17 (2003); *Zadvydas v. Davis*, 533 U.S. 678, 687-88 (2001); *Sierra v. INS*, 258 F.3d 1213, 1217-18 (10th Cir. 2001).

## DISCUSSION

While removal proceedings are being adjudicated, a noncitizen may be detained under 8 U.S.C. § 1225 or 1226. *See Johnson v. Guzman*

---

[3]    I must construe the petitioner's filings liberally because he is not represented by an attorney. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). But the Court should not act as an advocate for a pro se litigant. *See Hall*, 935 F.2d at 1110.

*Chavez*, 594 U.S. 523, 527-28, 533 (2021); *Jennings v. Rodriguez*, 583 U.S. 281, 287-89 (2018). If a noncitizen is ordered removed, he becomes subject to mandatory detention under 8 U.S.C. § 1231 during the ninety-day "removal period," which begins when the order of removal becomes "administratively final."[4] *See* 8 U.S.C. § 1231(a)(1)(B)(i); *Guzman Chavez*, 594 U.S. at 528, 533-34. The parties agree that the petitioner is being detained pursuant to Section 1231 because he is subject to an order of removal that became final in 2001.

If the noncitizen is not removed from the United States during the removal period, the government may in some circumstances continue to detain him under Section 1231 while it attempts to effectuate removal, but that detention may not be indefinite. *See* 8 U.S.C. § 1231(a)(6); 8 C.F.R. §§ 241.4, 241.13; *Guzman Chavez*, 594 U.S. at 528-29; *Zadvydas*, 533 U.S. at 688-701. Detention may continue only so long as removal is reasonably foreseeable. *Zadvydas*, 533 U.S. at 699; *accord Clark v. Martinez*, 543 U.S. 371, 377-86 (2005); *Morales-Fernandez v. INS*, 418 U.S. 1116, 1123-24 (10th Cir. 2005). Detention is presumptively reasonable for six months after the order of removal becomes final. *Zadvydas*, 533 U.S. at 701. After six months of detention, if the noncitizen "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," the government must either "respond with evidence sufficient to rebut that showing," *Zadvydas*, 533 U.S. at 701, "or release the alien," *Guzman Chavez*, 594 U.S. at 529.

The respondents argue that the petitioner's detention since February 24, 2026, is within the presumptively reasonable six-month period

---

4   The other two triggers for the beginning of the removal period—a court order lifting a stay and release from non-immigration detention or confinement—are not at issue here. *See* 8 U.S.C. § 1231(a)(1)(B)(ii)-(iii).

recognized in *Zadvydas*. They acknowledge that the petitioner also was detained on previous occasions after his order of removal was final, and the record indicates that the petitioner's cumulative detention exceeds six months. However, the respondents contend that the multiple periods of detention should not be aggregated.

"[T]he '6-month period' directly at issue in *Zadvydas* was simultaneously: (1) the six months immediately following the order of removal (*i.e.*, the 90-day 'removal period' plus roughly three additional months); (2) the first six months of *total* detention; and (3) the first six months of the *current* detention." *Phommachak v. Wesling*, 816 F. Supp. 3d 201, 209 (D. Mass. 2026). When those periods are not identical (*e.g.*, where, as here, a noncitizen is re-detained), district courts "across the country have approached *Zadvydas* in a variety of ways to differing ends." *Id.* (collecting cases); *compare, e.g.*, *Aguilar v. Noem*, No. 25-cv-03463-NYW, 2025 WL 3514282, at *3 (D. Colo. Dec. 8, 2025) ("[I]t appears that district courts more often conclude that a detainee's [multiple] periods of detention should be considered together in determining whether the detention has exceeded the presumptively reasonable time under *Zadvydas*."), *with, e.g.*, *Rustami v. Noem*, No. 25-3160-JWL, 2025 WL 3760744, at *2 n.1 (D. Kan. Dec. 30, 2025) ("Th[is] Court has consistently held . . . that the six-month period for the purpose of applying the *Zadvydas* framework restarts when an alien is taken into custody after previously having been released.").

It may be that in some circumstances, prior periods of detention should be aggregated for purposes of the *Zadvydas* presumption. I am not persuaded, however, that this is one of them. The petitioner here was at liberty under an order of supervision for thirteen years before he was re-detained in February 2026, so this is not a case where it appears the government may have manipulated the process to avoid expiration

of the six-month presumption. *Cf. Santacruz Macias v. Baltazar*, No. 1:26-cv-01046-SKC, 2026 WL 865174, at *3 (D. Colo. Mar. 30, 2026) (not aggregating prior periods of detention "would allow the government to detain non-citizens indefinitely by continuously releasing them just prior to the six-month expiration and then re-detaining them").

And regardless of whether the petitioner is still within the presumptively reasonable period of detention, his failure to cooperate with ICE's efforts to remove him to Mexico is fatal to his *Zadvydas* claim. The respondents state that:

> . . . On March 18, 2026, ICE served Petitioner with a Notice of Removal to Mexico as a third country. Petitioner refused to sign the notice.

> . . . On March 24, 2026, ICE served Petitioner with a Form I-229(a), Warning for Failure to Depart. The Form I-229(a) notifies an alien subject to a final order of removal of the consequences of taking any action to prevent or hamper his removal. ICE also served Petitioner with a Notice of File Custody Review, which advised him that ICE will review his custody status and potential for release on an order of supervision. The notice also advised Petitioner of some of the criteria that ICE will consider when deciding whether to release or continue to detain him. Additionally, the notice advised Petitioner that he can submit documents in support of his release.

> . . . On April 21, 2026, ICE served Petitioner with a Notice of Failure to Comply Pursuant to 8 C.F.R. § 241.4(g), which informed Petitioner that he would remain in ICE custody until he demonstrates that he is making reasonable efforts to comply with the order of removal as well as ICE's efforts to remove him. At this point the Post Order Custody Review under 8 C.F.R. § 241.4 has stopped due to Petitioner's failure to comply.

> On May 8, 2026, ICE attempted to discuss removal to a third country with Petitioner. However, Petitioner refused to speak with ICE and stated that he would remain in his present location. Petitioner was also overheard stating he would wait on the outcome of this habeas petition.

> . . . ICE continues to pursue Petitioner's removal to Mexico as a third country. The government of Mexico will accept Petitioner for removal and ICE can remove Petitioner to Mexico, but Petitioner must comply with ICE's removal efforts, including by signing the Notice of Removal.

*Id.*

The petitioner does not dispute that he has refused to sign a notice of removal or otherwise cooperate with ICE's efforts to remove him to Mexico. Instead, he asserts by way of explanation that he is "a Cuban citizen and not a citizen of Mexico," and he has "not received any documentation . . . that once . . . deported to Mexico, [he] will get any sort of relief or status, . . . or housing or even a health care plan." Doc. 18 at 1. According to the petitioner, he "will be left stranded in the wilderness and in a much more wors[e] condition." *Id.*

The "specter of indefinite detention" is not raised where "[t]he main reason [a noncitizen] still remains in the United States is his . . . refusal to cooperate with ICE officials in obtaining . . . necessary travel documents." *Abiodun v. Mukasey*, 264 F. App'x 726, 729 (10th Cir. 2008). Therefore, the petition must be denied. *See Zayas Rodriguez v. Baltasar*, No. 1:26-cv-00686-RMR, 2026 WL 1618516, at *6 (D. Colo. June 5, 2026) (rejecting *Zadvydas* claim because "the only thing preventing Respondents from effectuating Petitioner's removal [to Mexico as a third country] is Petitioner's own refusal to sign the Notice of Removal"); *Hernandez Montes v. Ceja,* No. 1:26-cv-01390-CNS, 2026 WL 1469231, at *2 (D. Colo. May 26, 2026) ("Petitioner's refusal to sign [the Notice of Removal to Mexico as a third country] is fatal to his request for habeas relief."); *Singh v. Barr*, No. 17-cv-03057-DDD, 2019 WL 2452822, at *4 (D. Colo. June 12, 2019) (rejecting *Zadvydas* claim in part because "there is no showing that India would not receive [the petitioner]," and "the only apparent hurdle to [removal] is his own refusal to cooperate").

## CONCLUSION

It is **ORDERED** that:

The Order to Show Cause, Doc. 7, is **DISCHARGED**, and the Application for a Writ of Habeas Corpus, **Doc. 1**, is **DENIED** and **DISMISSED WITHOUT PREJUDICE**;

Pursuant to Federal Rule of Civil Procedure 25(d), the Clerk of Court is **DIRECTED** to: (1) substitute George Valdez, Denver Field Office Director, U.S. Immigration and Customs Enforcement, in place of Respondent Robert Hagan; and (2) substitute David Venturella, Acting Director, U.S. Immigration and Customs Enforcement, in place of Respondent Todd Lyon; and

The Clerk of Court is **FURTHER DIRECTED** to enter final judgment and close this case.

DATED: July 23, 2026          BY THE COURT:

Daniel D. Domenico
Chief United States District Judge